Cite as 2024 Ark. 65

# SUPREME COURT OF ARKANSAS

No. CV-23-477

| | |
|---|---|
| | **Opinion Delivered:** April 18, 2024 |
| CHRIS P. CORBITT, ESQ.; ROBERT STEINBUCH, ESQ.; AND BEN MOTAL, ESQ., ON BEHALF OF THEMSELVES AND ALL PERSONS SIMILARLY SITUATED<br><br>APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTEENTH DIVISION [NO. 60CV-22-6976] |
| V. | HONORABLE MORGAN E. WELCH, JUDGE |
| PULASKI COUNTY CIRCUIT COURT; ERIC HIGGINS, IN HIS OFFICIAL CAPACITY AS PULASKI COUNTY SHERIFF; AND BARRY HYDE, IN HIS OFFICIAL CAPACITY AS PULASKI COUNTY JUDGE<br><br>APPELLEES | AFFIRMED IN PART; REVERSED AND REMANDED IN PART. |

**SHAWN A. WOMACK, Associate Justice**

Arkansas lawyer Chris Corbitt attempted to bring a firearm into the Pulaski County District Court and the Juvenile Justice Complex. Mr. Corbitt's initial complaint seeking permission to carry firearms in courthouses was dismissed by the circuit court, a decision later affirmed by a majority of this court. Subsequently, after encountering firearm restrictions in a different courthouse, Mr. Corbitt and other plaintiffs filed another complaint, which was also dismissed. We hold that Mr. Corbitt is collaterally estopped from pursuing his claims in the case at bar, but the remaining plaintiffs may proceed. We further hold that attorneys, as officers of the court, are authorized by statute to possess handguns in courthouses. We reverse the circuit court's denial of the petition for a declaratory judgment

as it pertains to the remaining plaintiffs and remand for further proceedings consistent with this opinion.

## I.    *Facts*

On January 3, 2020, Mr. Corbitt attempted to bring a firearm into the Pulaski County District Courthouse.  The courthouse security guard informed him that lawyers aren't allowed to have handguns in any courtroom or courthouse in the state.  On January 9, 2020, Mr. Corbitt filed a complaint in the circuit court (hereinafter *Corbitt I*).  He sought a declaration from the court that Act 1087 of 2017, codified in Arkansas Code Annotated section 5-73-122(b), allows attorneys as "officers of the court" to carry firearms in any courtroom or courthouse in the state.  He also sought a declaration that the actions of the Pulaski County sheriff and the judge violated Arkansas law.

Pulaski County Judge Barry Hyde and Pulaski County Sheriff Eric Higgins sought to dismiss Mr. Corbitt's complaint by arguing that his interpretation of the relevant statute would result in an unconstitutional outcome.  Mr. Corbitt responded by filing a petition for writ of mandamus on September 29, 2021, asking the court to direct the defendants to allow attorneys to carry firearms in court as permitted by state law.  After a hearing, the circuit court ruled on January 27, 2022, stating that Mr. Corbitt was not entitled to injunctive relief, declaratory judgment, or a writ of mandamus.  Mr. Corbitt appealed the Pulaski County Circuit Court order denying his complaint for declaratory judgment and injunctive relief and petition for writ of mandamus seeking to direct appellees to allow Mr. Corbitt to carry a firearm inside the Pulaski County District Court.  This court ultimately

upheld the circuit court's decision in *Corbitt I*, and the mandate affirming the circuit court's order was issued on March 21, 2023.[1]

While *Corbitt I* was being reviewed by this court, Mr. Corbitt attempted to enter a second Pulaski County court facility with a handgun. On October 3, 2022, he inquired with a security guard at the Pulaski County Courthouse about bringing a firearm into the building and was denied permission. Despite not carrying a firearm into the courthouse, Mr. Corbitt took a photograph of a sign outside Judge Tim Fox's courtroom that prohibited firearms. In response to being refused entry with a firearm and encountering Judge Fox's sign, Mr. Corbitt, Robert Steinbuch, and Ben Motal filed a class-action complaint in the Pulaski County Circuit Court against the appellees and the Pulaski County Circuit Court, represented by Judge Tim Fox. They sought declaratory relief to allow handguns into the Pulaski County Courthouse and Judge Fox's courtroom, seeking the same relief as in *Corbitt I*.

The appellees responded to the appellants' complaint with a motion to dismiss. The appellants amended their complaint, after which the appellees again moved to dismiss. However, the appellants failed to serve Judge Fox and the Pulaski County Circuit Court with their complaint within the required time frame, leading Judge Fox to move for dismissal of the cause of action. Consequently, the appellants acknowledged their failure to serve Judge Fox in accordance with Rule 4 of the Arkansas Rules of Civil Procedure and opted to voluntarily dismiss their cause of action against him.

The appellants proceeded to amend their complaint twice more. In their final version, they based their cause of action on several facts: they are licensed attorneys in

---

[1] *Corbitt v. Pulaski Cty. Jail*, 2023 Ark. 18, 660 S.W.3d 568.

Arkansas, they wish to carry firearms in the Pulaski County Courthouse and its courtrooms, there is a sign at the courthouse prohibiting attorneys from carrying firearms, they refrained from bringing a firearm into the courthouse due to the sign, and on October 3, 2022, Mr. Corbitt asked a security guard if he could bring a firearm into Judge Tim Fox's courtroom, and the security guard told him no.

In response to the second amended complaint, the appellees submitted a third motion to dismiss, which included the previous two motions. On March 22, 2023, the circuit court granted both the appellants' motion for voluntary dismissal of Judge Fox and the appellees' motion to dismiss. The circuit court concluded, among other things, that issue preclusion applies to Mr. Corbitt, who was collaterally estopped from bringing the same case twice, and that the remaining plaintiffs did not have sufficient standing and failed to plead sufficiently under Arkansas Rule of Civil Procedure 12(b)(6).

The court also found that even if issue preclusion were not applicable, it would rule similarly to Judge Wright's decision regarding the interpretation of Arkansas Code Annotated section 5-73-122. The court rejected the plaintiff's argument, stating that it was based on a flawed premise that misread the plain meaning of the statute and ignored the importance of Amendment 80 to the Arkansas Constitution. The circuit court emphasized that Amendment 80 gives the Arkansas Supreme Court the power to regulate court procedure, including the discretion to determine when weapons should be allowed in courtrooms. The court highlighted the need for courts to have the discretion to control who may bring weapons into courtrooms, especially in sensitive cases such as domestic-violence disputes and criminal trials. Ultimately, the circuit court ruled that any doubt about the constitutionality of a statute must be resolved in favor of its constitutionality, and

statutory interpretations should not produce absurd results. Therefore, the court contrived an interpretation of the statute that gave exclusive discretion to the court regarding who may bring a handgun into courtrooms and courthouses.

Appellants now contest the circuit court's dismissal of their complaint. On appeal, appellants have abandoned any argument regarding courtrooms and proceed only with the applicability of section 5-73-122 to courthouses.

## II. *Discussion*

Collateral estoppel, also known as issue preclusion, bars relitigation of issues of law or fact previously litigated by a party. *Johnson v. Union Pac. R.R.*, 352 Ark. 534, 544–45, 104 S.W.3d 745, 750–51 (2003) (citing *Palmer v. Ark. Council on Econ. Educ.*, 344 Ark. 461, 40 S.W.3d 784 (2001)); *Winrock Grass Farm, Inc. v. Affiliated Real Est. Appraisers of Ark., Inc.*, 2010 Ark. App. 279, at 10, 373 S.W.3d 907, 913.

The elements of collateral estoppel are (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Id.* (citing *Palmer* 344 Ark. 461, 40 S.W.3d 784; *Zinger v. Terrell*, 336 Ark. 423, 985 S.W.2d 737 (1999)).

Here, Mr. Corbitt satisfies all the elements of collateral estoppel. First, Counts I through IV of the complaint are exactly the same as the issues raised in his initial complaint. The only difference between this case and the first one is the location at which Mr. Corbitt inquired about entering with a handgun. In the previous case, Mr. Corbitt wanted to enter the Pulaski County District Court and Juvenile Justice Complex, whereas now, he aims to enter the Pulaski County Courthouse. There is no other distinction in his claims or request

5

for relief. In both instances, he asked the court to declare that he was permitted to enter any Arkansas courtroom or courthouse with a handgun without the necessity of authorization other than section 5-73-122, citing his status as an "officer of the court." Having examined what Mr. Corbitt seeks in this case, we conclude that it mirrors precisely what he pursued in *Corbitt I*.

Considering the next aspect of collateral estoppel, it is evident that the previous case underwent thorough and complete litigation. In *Corbitt I*, the appellants served the county appellees, motions were submitted, discovery procedures were carried out, and a conclusive hearing occurred. Ultimately, *Corbitt I* concluded not only with a final judgment but also with an opinion from this court affirming the final judgment. The circuit court's ruling in *Corbitt I* was upheld by this court on March 2, 2023. Consequently, the appellants' earlier case culminated in a legally binding and conclusive judgment, which was further affirmed on appeal.

Mr. Corbitt's previous case before the Pulaski County Circuit Court underwent actual litigation on the same issues and concluded with a definitive judgment, and the decision was pivotal to that judgment. Since the relief he sought in this case mirrors that of *Corbitt I* and is based on the same legal premise, Mr. Corbitt is barred from seeking a second opportunity under the principle of collateral estoppel. As a result, he was appropriately dismissed, and we affirm on this point.

Finally, the remaining appellants claim to have repeatedly desired to enter courthouses with firearms but were deterred from doing so due to the prohibition at issue here. The circuit court, citing *Nelson v. Arkansas Rural Medical Practice Loan & Scholarship Bd.*, 2011

Ark. 491, 385 S.W.3d 762, dismissed the remaining appellants for lack of standing. It relied on the following language:

> The Declaratory Judgment Statute is applicable only where there is a present actual controversy, and all interested persons are made parties, and only where justiciable issues are presented. It does not undertake to decide the legal effect of laws upon a state of facts which is future, contingent or uncertain. A declaratory judgment will not be granted unless the danger or dilemma of the plaintiff is present, not contingent on the happening of hypothetical future events; the prejudice to his position must be actual and genuine and not merely possible, speculative, contingent, or remote. [*Nelson*, 2011 Ark. 491, at 12, 385 S.W.3d at 769 (quoting *Cummings v. City of Fayetteville*, 249 Ark. 151, 154–55, 741 S.W.2d 638, 639–40 (1987))]."

This case, however, is distinguishable from *Nelson*. First, Nelson was barred from bringing his claim because he lacked standing to seek a determination of whether a community-match-loan recipient could face the suspension of his license for breaching a contract. Since Nelson no longer possessed an Arkansas medical license, he had no legal interest in the controversy. The court emphasized that declaratory judgments require a present actual controversy, and since Nelson's situation was contingent on hypothetical future events, his claim did not meet the requirements for declaratory relief. Therefore, his claim was barred. Here, unlike in Nelson, the remaining appellants are practicing Arkansas attorneys who were actually deterred from bringing their firearms into the courthouses.

When a plaintiff has alleged an intention to engage in a course of conduct affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Doe v. Bolton*, 410 U.S. 179, 188 (1973). It then becomes evident that the remaining appellants possess a vested and ongoing interest in the matter. Therefore, the circuit court erred when it barred their claims for lack of standing. Additionally, we hold that the facts alleged in the complaints collectively were

sufficient to overcome a motion to dismiss under Rule 12(b)(6). The remaining claims must proceed on the merits of the case.

The relevant language from the controlling statute is as follows:

[A] law enforcement officer, either on-duty or off-duty, officer of the court, bailiff, or other person authorized by the court is permitted to possess a handgun in the courtroom of any court or a courthouse of this state.

Ark. Code Ann. § 5-73-122(b) (Supp. 2021).

In interpreting the language of the statute in parts relevant to the remaining issues in this appeal, it unequivocally permits certain individuals, including 1) law enforcement officers, 2) bailiffs, and 3) officers of the court, to possess handguns in courthouses within the state. First, each word in a statute must be given significance and meaning. Here, the inclusion of the term "officer of the court" alongside law enforcement officers and bailiffs suggests a deliberate intent by the legislature to afford individuals falling within this category the privilege of possessing handguns in court settings. Next, it is important to emphasize that the term "other" serves as a determiner in this case. If the drafters had meant for the phrase "authorized by the court" to apply to each item, they would have left out the word "other."[2] As a result, attorneys, as officers of the court,[3] are recognized under the statute as individuals authorized to possess handguns in courthouses within the state.

---

[2]The argument that "other person authorized by the court" modifies the first three groups is absurd and would render most of the statute superfluous. *See Rhee*, 375 Ark. 491, 495, 292 S.W.3d 292, 294 (2009) (refusing to construe a statute in a way that would make a word void, superfluous, or insignificant). If this were, in fact, true, the statute would only need to authorize one group to carry a handgun inside a courthouse: those whom the judge has authorized.

[3]As this court has repeatedly recognized, an "officer of the court" is commonly understood to include an attorney or a lawyer. *Lewondowski v. State*, 2022 Ark. 46, at 6, 639 S.W.3d 850, 855 ("The attorneys at trial are all esteemed officers of the court . . . .");

8

Although Amendment 80, section 3 of the Arkansas Constitution was raised initially in this case, we need not address it given that appellants have abandoned the argument regarding courtrooms on appeal and have narrowly argued their position as it relates to courthouses. The dissent claims this court distinguished courtrooms from courthouses, and that is "a distinction without a difference." Yet this court distinguishes the two because the General Assembly distinguished them in the section we are called to interpret. Section 5-73-122(e) demonstrates that the General Assembly did not consider courthouses and courtrooms the same. While subsection 122(c) used both terms, subsection 122(e) created an exception where it provided off-duty law enforcement officer could not "carry a firearm into a courtroom if the off-duty law enforcement officer is a party to or a witness in a civil or criminal matter. . ." It did not provide the same exclusion for courthouses. Thus, when the appellant limited his case to courtrooms, so does the court limit its constitutional application. A decision on a challenge to the courtroom provision will be considered when it is before the court, and we will not sua sponte address it now.

Accordingly, the circuit court erred when it denied the remaining plaintiffs' petition for a declaratory judgment. We reverse on this point and remand with instructions to the circuit court to enter an order consistent with this opinion.

Affirmed in part; reversed and remanded in part.

BAKER, J., concurs in part and dissents in part.

**KAREN R. BAKER, Justice, concurring in part and dissenting in part.** While I agree with the majority's conclusion that Corbitt is barred by collateral estoppel, I dissent

---

*In re Arkansas Access to Just. Month*, 2021 Ark. 171, at 1 (per curiam) ("As officers of the court, Arkansas attorneys bear a professional responsibility. . . .").

because I cannot agree with the majority's decision on the merits as applied to the remaining appellants. As noted by the majority, "[o]n appeal, appellants have abandoned any argument regarding courtrooms and proceed only with the applicability of section 5-73-122 to courthouses." However, Arkansas Code Annotated section 5-73-122(b) makes no distinction between courtrooms and courthouses. It provides:

> [A] law enforcement officer, either on–duty or off-duty, officer of the court, bailiff, or other person authorized by the court is permitted to possess a handgun in the courtroom of any court or a courthouse of this state.

As the appellees point out, because the statute treats courtrooms and courthouses the same, the attempt to distinguish courtrooms and courthouses is a distinction without a difference. In my view, the majority's interpretation of the statute as it applies to courthouses necessarily applies to courtrooms. In fact, in its interpretation of section 5-73-122(b), the majority states that "the inclusion of the term 'officer of the court' alongside law enforcement officers and bailiffs suggests a deliberate intent by the legislature to afford individuals falling within this category the privilege of *possessing handguns in court settings*." (Emphasis added.) This leads to an unconstitutional result. As relevant here, the circuit court found in pertinent part:

> This Court would find an interpretation of ACA § 5-73-122 as suggested by Plaintiff, to be Unconstitutional.
>
> This Plaintiff's Argument fails, as it is founded upon a flawed premise that mis-reads the plain meaning of ACA § 5-73-122 while, simultaneously, completely ignoring the import of Amendment 80 to the Arkansas Constitution.
>
> Amendment 80 gives the Supreme Court the power to regulate Court Procedure. The conduct of trials and hearings is procedural.
>
> . . . .

The Supreme Court should, if it deems it necessary, determine how to populate courts with weapons-not the legislature, and WHEN NOT TO DO SO. Thus far, the High Court has not done so, nor has it referred the matter to any of its committees or sub-committees.

I agree with the circuit court's finding that the appellants' position ignores the import of Amendment 80 of the Arkansas Constitution. The passage of Amendment 80 charged the Arkansas Supreme Court with the duty to "prescribe the rules of pleading, practice and procedure for all courts." Ark. Const. amend. 80, § 3. *Tilley v. Malvern Nat'l Bank*, 2019 Ark. 376, at 2, 590 S.W.3d 137, 139. Because the statute places courtrooms and courthouses on equal footing, the majority's interpretation of the plain language of the statute violates Amendment 80, as it is for this court to prescribe the rules of pleading, practice, and procedure for all courts. This power cannot be abrogated by the legislature. Accordingly, I must dissent.

*Corbitt Law Firm, PLLC*, by: *Robert Steinbuch* and *Chris P. Corbitt*, for appellants.

*Adam Fogelman*, *Frank LaPorte-Jenner*, and *Dominique Lane*, Pulaski County Attorney's Office, for appellees.