Cite as 2026 Ark. App. 98

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-24-785

| | |
|---|---|
| CITY OF BAUXITE, ARKANSAS; AND EDDIE JONES, IN HIS OFFICAL CAPACITY AS MAYOR OF BAUXITE AND IN HIS INDIVIDUAL CAPACITY AS A CITIZEN OF BAUXITE, SALINE COUNTY, ARKANSAS | Opinion Delivered February 18, 2026 |
| | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CV-23-1658] |
| APPELLANTS | HONORABLE BRENT DILLON HOUSTON, JUDGE |
| V. | |
| ARKANSAS LOCAL POLICE AND FIRE RETIREMENT SYSTEM (LOPFI) BY AND THROUGH ITS BOARD OF TRUSTEES IN THEIR OFFICIAL CAPACITIES; ARKANSAS FIRE AND POLICE PENSION REVIEW BOARD (PRB) BY AND THROUGH ITS BOARD IN THEIR OFFICIAL CAPACITIES; ET AL. | |
| APPELLEES | AFFIRMED |

## N. MARK KLAPPENBACH, Chief Judge

The fundamental issue in this case is the amount owed by the City of Bauxite to the

Arkansas Local Police and Fire Retirement System (LOPFI) for Bauxite's underfunded police

retirement plan. The circuit court dismissed Bauxite's complaint for failure to state facts on

which relief could be granted, more specifically finding that Bauxite had failed to exhaust its administrative remedies. We affirm.

To place the arguments in context, we provide a simplified explanation of the facts. The LOPFI is a state government organization that operates the retirement systems for police officers and firefighters. Municipalities, like the City of Bauxite, may participate in the program. The Fire and Police Pension Review Board (PRB) is essentially the predecessor of LOPFI, and the organizations have the same executive director and administrative staff. The PRB oversees local pension funds, certifies the insurance premium tax revenues, and recommends an amount to the State Treasurer for distribution to the local pension plans to stabilize underfunded plans. Municipalities contribute to LOPFI for the benefit of its employees. LOPFI calculates the amount municipalities need to fund to pay for future benefits to retirees. Municipalities must also pay their share of LOPFI administrative expenses, which is determined by agency personnel and placed in a separate account.

This case concerns Bauxite's police officers. Bauxite opted to participate in LOPFI for the benefit of its police officers. In August 2023, by passing an ordinance, Bauxite disbanded its police department. Bauxite created, instead, a marshal service to provide policing services. The practical effect was that Bauxite would not have to contribute to LOPFI for the marshal service employees, but it remained liable for its part of Bauxite's existing underfunded employer-accumulation account for the police department.

Bauxite admittedly owed a remaining balance to LOPFI. The amount, however, was disputed. LOPFI determined that the City's outstanding obligation regarding the police officers was $402,634, payable at $3,613 a month for fifteen years.

LOPFI provided Bauxite with a table of calculations on the existing police staff through the end of 2022 to substantiate the amount that LOPFI said was outstanding. Bauxite sought additional information about the data used in LOPFI's calculations. Bauxite wanted "verification and clarification" of the police personnel underpinning the calculations. Some of the requested information was disclosed by the administrative personnel, but Bauxite was dissatisfied with what was provided. Bauxite did not pay the monthly installments. LOPFI certified the amount due from Bauxite as "delinquent" to the State Treasurer.

Separate from the overdue funds, LOPFI and PRB also requested the State Treasurer not to remit any insurance premium tax allocations (a proportionate share of these revenues to Bauxite) for Bauxite's obligations. This 2.5 percent tax is charged on all insurance premiums collected by all foreign and alien property and casualty insurance companies doing statutorily defined business in Arkansas. A certain percentage of this revenue that accrues is dedicated to "qualified" cities in Arkansas, as determined by LOPFI. By statute, this "turnback allocation" is based on a calculation of cities for their "active employees." LOPFI and PRB reasoned that, because Bauxite had no active police department employees, there was no police payroll on which the tax allocations could be calculated.

Bauxite did not seek further review from the LOPFI Board or appear at any LOPFI Board meeting. There are no existing administrative rules or procedures in place for LOPFI to conduct formal appeals. Bauxite decided to file a declaratory action with the circuit court seeking a determination of the amount it owed LOPFI. Bauxite later amended its complaint to add the town's mayor as plaintiff to the complaint, not just as the mayor in his official capacity but also as an affected individual taxpayer. Bauxite alleged that, because Bauxite was not given credit for its proportionate share of the revenue collected from foreign companies, it was entitled to a declaration that it was owed credit for the revenue portion. In his individual capacity, the mayor alleged that this was an illegal exaction. Thus, the complaint was for a declaratory judgment for the amount owed and a declaration that the foregoing actions constituted an illegal exaction.

LOPFI and PRB moved to dismiss Bauxite's complaint because it had not exhausted its administrative remedies. LOPFI and PRB contended that Bauxite needed to appeal the administrative decisions first to each organization's Board, so the circuit court lacked jurisdiction to consider Bauxite's complaint. Bauxite responded that there was no available avenue to appeal, and regardless, the Boards would just "rubber stamp" what the administrative staff had done. Thus, Bauxite contended that any administrative appeal would be futile.

The circuit court conducted a hearing and took the matter under advisement. Subsequently, the circuit court issued its order and found that, even absent existing procedures for appeal to the Boards, an administrative action of any state agency is not final

4

until its governing body has had "the final word" on its position, "rubber stamped or not." The circuit court found that Bauxite's lawsuit was not ripe for judicial review and that it lacked jurisdiction to hear these agency matters. The circuit court dismissed Bauxite's complaint without prejudice, and this appeal resulted.

Bauxite abandoned any pending claims, so this appeal is properly before us. In reviewing a circuit court's decision on a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *York v. GALR, LLC*, 2022 Ark. App. 287, 647 S.W.3d 1. In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.* We look only to the allegations in the complaint and not to matters outside the complaint. *Id.* We treat the facts alleged in the complaint as true but not a plaintiff's theories, speculation, or statutory interpretation. *Id.* The standard of review for the grant of a motion to dismiss is whether the circuit court abused its discretion. *Id.* We consider questions of law de novo. *Id.*

Litigants must exhaust their administrative remedies before seeking a declaratory judgment. *Brown v. Towell*, 2021 Ark. 60, 619 S.W.3d 17. A circuit court lacks jurisdiction over a suit where a party has failed to exhaust his or her administrative remedies. *Mun. Health Benefit Fund v. Hendrix*, 2020 Ark. 235, 602 S.W.3d 101. Stated differently, the doctrine of exhaustion of administrative remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has

5

been exhausted. *Id.* The doctrine has exceptions—for example, exhaustion is not required when no genuine opportunity for adequate relief exists, when irreparable injury will result if the complaining party is compelled to pursue administrative remedies, or when an administrative appeal would be futile. *Id.* The failure to exhaust administrative remedies is grounds for dismissal. *Ahmad v. Beck*, 2016 Ark. 30, 480 S.W.3d 166.

The circuit court did not abuse its discretion in dismissing Bauxite's (and the mayor's) complaint. Bauxite is not, and was not, questioning that it owed money regarding its underfunded police pension fund. The issue raised here is the correctness of the final calculation, not the authority or lack thereof inherent in LOPFI or PRB. This requires interpretation and application of statutes and internal procedural rules specific to municipalities with underfunded pension funds. Bauxite was required to follow the appeals process as defined in the Administrative Procedure Act before seeking redress in circuit court. *See, e.g.*, *Mills v. Ark. Loc. Police & Fire Ret. Sys.*, 2024 Ark. App. 279, 688 S.W.3d 485.

We further hold that the circuit court properly dismissed the illegal-exaction claim. An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law. *White v. Ark. Cap. Corp./Diamond State Ventures*, 365 Ark. 200, 226 S.W.3d 825 (2006). There are two types of illegal-exaction cases: (1) "public funds" cases in which the plaintiff contends that public funds generated from tax dollars are being either misapplied or illegally spent; and (2) "illegal-tax" cases in which the plaintiff asserts that the tax itself is illegal. *Little Scholars of Ark. Found. v. Pulaski Cnty., Ark.*, 2024 Ark. 106, 689 S.W.3d 428. As

pleaded, this complaint purports to claim that the mayor, as an individual taxpayer, has suffered from an illegal exaction under the "public funds" theory.

Bauxite (and the mayor) do not plead facts sufficient to establish that LOPFI and PRB engaged in a misapplication or illegal expenditure of public funds. Thus, their claim is not one for an illegal exaction, and the circuit court did not err in dismissing the complaint. *See Prince v. Ark. State Highway Comm'n*, 2019 Ark. 199, 576 S.W.3d 1. Summarily stating that an illegal exaction has taken place does not make it so. A flaw in the assessment or collection procedure, no matter how serious from the taxpayer's point of view, does not make the exaction itself illegal. *Little Scholars*, 2024 Ark. 106, 689 S.W.3d 428. We treat the facts alleged in the complaint as true but not a plaintiff's theories, speculation, or statutory interpretation. *York*, 2022 Ark. App. 287, 647 S.W.3d 1. There is no allegation that the statutory and administrative rules were unlawful. Boiled down to its essence, this is not an illegal-exaction matter; rather, it is an assessment dispute about the final sum owed by Bauxite to LOPFI. *See Little Scholars*, *supra*. PRB's Rules provide for the qualification and calculation of tax allocations. These rules provide for assessing which cities are "qualified locations" each year. PRB's Rule 6 permits an employer to submit a written request for a review before the PRB Board. *See* 137.00.1-6 Ark. Admin. Code (WL current through July 15, 2025). LOPFI and PRB have acted fully within their authority to determine the liability for and qualification for both the LOPFI contributions for police employees prior to dissolving the police department and the revenue allocations based on current payrolls.

7

There is no final determination of the amount due. Dismissal without prejudice was appropriate.

Affirmed.

VIRDEN and MURPHY, JJ., agree.

*Madison Law Firm*, by: *Richard C. Madison*, for appellants.

*Ben Honaker*, for separate appellees Arkansas Local Police and Fire Retirement System and its board of trustees in their official capacities.

*Tim Griffin*, Att'y Gen., by: *Brian D. Black*, Sr. Ass't Att'y Gen.; and *Sean M. Rowland*, Ass't Att'y Gen., for separate appellees Arkansas Fire and Police Pension Review Board and its board members in their official capacities.